UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LONNIE H.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22-cv-00086-SEB-KMB |
| ) | |
| KILOLO KIJAKAZI Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Lonnie H. applied for disability insurance benefits from the Social Security Administration ("SSA") on August 16, 2019, [dkt. 7-5 at 1], and supplemental security income on September 13, 2019, [*id.* at 9], alleging an onset date of June 24, 2018. [*Id.* at 2, 9.] His application was denied initially on October 25, 2019, and upon reconsideration on December 20, 2019. [Dkt. 7-4 at 5, 14, 26, 33.] Administrative Law Judge Renita K. Bivins (the "ALJ") conducted a hearing on September 28, 2021. [Dkt. 7-2 at 37.] The ALJ issued a decision on November 8, 2021, concluding that Lonnie was not entitled to receive disability benefits. [*Id.* at 7-29.] The Appeals Council denied review on May 11, 2022. [*Id.* at 1.] Lonnie timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. [Dkt. 1.] This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motions.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I.    STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [her] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotation marks and citation omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).[2] The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] . . . ; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects. Cases may reference the section pertaining to disability insurance benefits, such as *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000), which cites 20 C.F.R. § 404.1520. Generally, a verbatim section exists establishing the same legal point with both types of benefits. The Court will take care to detail any substantive differences that are applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.   BACKGROUND[3]

Lonnie was born in 1967 and was 50 years old at the alleged onset of his disability in 2018. [Dkt. 7-5 at 2, 9.] Lonnie has a high school education and previously worked as a forklift operator and packaging line attendant. [Dkts. 7-6 at 3; 7-2 at 26.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4) and concluded that Lonnie was not disabled. [Dkt. 7-2 at 12-29.] Specifically, the ALJ found as follows:

- At Step One, that Lonnie had not engaged in substantial gainful activity[4] since his alleged onset date of June 24, 2018. [*Id.* at 12.]

- At Step Two, Lonnie had the following severe impairments: degenerative spondylosis, right rotator cuff tendinitis, schizophrenia, and other psychotic disorders. [*Id.* at 13.]

- At Step Three, the ALJ determined that no listings were met or medically equaled. [*Id.* at 13-16.]

- After Step Three but before Step Four, that Lonnie had the RFC to perform "medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c) except as follows. [Lonnie] is able to lift and carry, up to 50 pounds occasionally and 25 pounds frequently; able to stand and/or walk for 6 hours per 8-hour day and sit for 6 hours per 8-hour day with normal

---

[3] The relevant evidence of record is amply set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a), (b).

breaks. [Lonnie] can occasionally climb ladders ropes or scaffolds and frequently stoop and crouch. [Lonnie] can maintain attention and concentration and sustained persistence and pace for a sufficient period to complete details tasks but no complex tasks. [Lonnie] can interact with coworkers and supervisors on a superficial and ongoing basis meaning no requirement for conflict resolution, arbitration, or persuading others. [Lonnie] is able to adapt to routine changes in work process and environment with detailed work-related tasks but no complex tasks." [*Id.* at 16-26.]

- At Step Four, that Lonnie could perform his past relevant work as a forklift operator and packaging line attendant. [*Id.* at 26-27.]

- At Step Five,[5] that there were jobs that existed in significant numbers in the national economy that Lonnie could have performed through the date of the decision, such as Laundry Worker II, Groundskeeper, and Industrial Cleaner. [*Id.* at 27-29.] Accordingly, the ALJ determined that Lonnie was not disabled at any time between his alleged onset date of June 24, 2018, through the date of the ALJ's decision. [*Id.* at 29.]

### III. DISCUSSION

In seeking judicial review, Lonnie contends that the ALJ erred in a number of ways.[6] In Lonnie's view, "[t]here are two critical defects that infect" the entirety of the ALJ's decision. [Dkt. 11 at 11.] "First, the Decision is not supported by substantial evidence because the ALJ failed to

---

[5] Because the ALJ found that Lonnie could perform his past relevant work, her analysis could have ended at Step Four. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."). The ALJ elected to proceed to Step Five and made "alternative findings." [Dkt. 7-2 at 27.]

[6] The Commissioner argues, and this Court agrees, that Lonnie has used a "kitchen sink" approach to briefing his challenges to the ALJ's decision; that is, he has thrown out several arguments and sub-arguments without clearly outlining or explaining which issues he is raising on appeal. [Dkt. 19 at 9-10.] Counsel should take care to avoid raising claims that "are not developed to the point of establishing error, do not fully engage the ALJ's relevant rationale, and/or do not properly analyze the authority they purport to rely upon," so as to avoid "distract[ing] the Court's resources from both [his] meritorious claim(s), as well as other deserving cases." *Barbara S. v. Saul*, 2020 WL 4499631, at *5 (S.D. Ind. Aug. 5, 2020).

When there are a significant number of distinct issues raised on appeal, counsel should ensure that they are organized in a way that allows for clear and efficient review by the Court. Here, Lonnie's outlining and organization of the issues presented over the course of his briefing leaves something to be desired. [*See, e.g.*, dkt. 11 at 1-2 (outlining five issues and several sub-issues), 11 (outlining "two critical defects that infect the entire Decision"), 18-34 (organizing the arguments under three different headings).]

build an accurate and logical bridge between the evidence and her conclusions," and "[s]econd, the ALJ committed an error of law by failing to adequately explain how certain evidence of 'normal' findings and functioning outweighs evidence undermining the ALJ's conclusions, rendering the Decision 'unreliable.'" [*Id.*]

While at times difficult to follow the organization of Lonnie's arguments (and numerous sub-arguments), he outlines them under three general headings: (1) "[t]he ALJ erred in assessing the medical opinions," [*id.* at 18-24]; (2) "the RFC is not supported and lacks an accurate and logical bridge," [*id.* at 24-33]; and (3) "the ALJ's ultimate decision is unsupported," [*id.* at 33-34]. As a part of his second argument, that the RFC is not supported and lacks an accurate and logical bridge, Lonnie argues that the ALJ did not properly consider his obesity or his limited lumbar flexion when crafting the RFC. [*Id.* at 26-29.] The Court will address the issues as necessary to resolve the appeal.

### A. The ALJ erred by failing to adequately consider Lonnie's obesity in combination with his other impairments.

Lonnie argues that he "cannot perform the requirements of Medium, or even Light work, which would require him to stand or walk 6 hours a day," particularly because of his obesity in combination with his "significant spinal issues." [Dkt. 11 at 26.] While acknowledging that the ALJ stated that she considered his obesity when crafting the RFC, Lonnie argues that there is no mention of obesity in the ALJ's discussion of his RFC and it is therefore unclear how the ALJ accounted for his obesity in combination with his other impairments. [*Id.* at 26-29.]

In response, the Commissioner argues that Lonnie failed to produce evidence "that obesity precluded performance of the RFC, let alone showed that [Lonnie] was more limited than Dr. Jacobs's opinion." [Dkt. 19 at 17.] The Commissioner further argues that the ALJ "does not need to discuss obesity if treatment providers do not discuss the condition in any detail." [*Id.*]

6

Lonnie argues in reply that the medical providers did in fact "detail[] [Lonnie's] obesity in combination with abnormal findings on exam" and that the Commissioner's claims are contradicted by the SSA's own regulations and Seventh Circuit precedent. [Dkt. 20 at 15.]

SSA regulations require an ALJ "to consider the effects of obesity at several points in the five-step process" and to "articulate, at least minimally, [her] analysis of the evidence so that [the] court can follow [her] reasoning." *Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004) (citing *Clifford*, 227 F.3d at 870; SSR 00–3p at 5). An ALJ must consider a claimant's obesity in combination with his other impairments when determining the claimant's limitations. *See Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011). Even when obesity itself is not disabling, it must be considered when determining the claimant's ability to perform work. *Browning v. Colvin*, 766 F.3d 702, 706 (7th Cir. 2014). A boilerplate or bare statement that the ALJ had considered the claimant's obesity is not sufficient. *See, e.g.*, *Tracey S. v. Saul*, 2020 WL 831588, at *6 (N.D. Ind. Feb. 20, 2020). The ALJ should consider the impact of obesity on a claimant's limitations even when he does not specifically claim obesity as an impairment when there are references to his weight in the medical records that are "likely sufficient to alert the ALJ to the impairment." *Skarbek*, 390 F.3d at 504 (citing *Clifford*, 227 F.3d at 873).

An ALJ's failure to adequately address a claimant's obesity does not, however, necessarily warrant remand. If a claimant fails to explain how obesity will affect his work, it is harmless that the ALJ failed to explicitly consider the claimant's obesity. *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (quoting *Dornseif v. Astrue*, 499 F. App'x 598, 600 (7th Cir. 2013)). Additionally, if the ALJ does not discuss obesity explicitly but instead adopts limitations suggested by physicians who were aware of the obesity, courts may find that the claimant's obesity appropriately factored into the ALJ's decision. *Skarbek*, 390 F.3d at 504.

In this case, Lonnie did not explicitly include obesity as an impairment when he applied for disability benefits. [*See* dkt. 7-6 at 2.] However, there are numerous references to Lonnie's weight and obesity in the record, such that the ALJ was alerted to the impairment. For example, medical records consistently note Lonnie's obesity over the span of several years. [*See, e.g.*, dkts. 7-7 at 377 (noting Lonnie's obesity on 11/09/2017), 370 (noting Lonnie's obesity on 06/18/2018), 214 (noting Lonnie's obesity on 12/26/2018), 356 (noting Lonnie's obesity on 05/17/2019); 7-9 at 172 (noting Lonnie's obesity on 10/01/2019), 273 (noting Lonnie's obesity on 07/13/2020), 88 (noting Lonnie's obesity on 12/29/2020), 198 and 345 (noting Lonnie's obesity on 01/11/2021).] On three separate occasions in 2020, Dr. Douglas Obermeyer found that Lonnie's obesity was a "complicating factor" with respect to his spinal issues and noted that his recovery "may take longer than an average patient with an uncomplicated case." [Dkt. 7-9 at 68, 71, 74.]

The ALJ was aware of Lonnie's obesity, as she referenced it twice in her decision. First, the ALJ found that the record "showed evidence of diabetes, hypertension, left plantar calcaneal spur, hyperlipidemia, cellulitis, acid reflux, cervical ligaments sprain, cervicalgia, status post COVID-19, *obesity*, and shoulder pain," but that "the record shows that these conditions have either been successfully treated, controlled, stabilized, or otherwise do not more than minimally affect [Lonnie's] ability to perform basic work activities." [Dkt. 7-2 at 13 (emphasis added).] Second, the ALJ noted that "[t]he evidence showed [Lonnie] was obese standing 70 inches weighed 264 pounds for a body mass index of 37," and that "[i]n accordance with Social Security Ruling 19-02p, the undersigned has considered this in evaluating [Lonnie's RFC], however, there is no evidence of any complaints or complications attributed to obesity." [*Id.*]

The ALJ does not ever explain how Lonnie's obesity would have impacted his limitations on its own or in combination with his other impairments, most notably his spinal issues.[7] Though included in a lengthy list of impairments the ALJ found to be "successfully treated, controlled, stabilized" or otherwise no more than "minimally affect[ing]" his "ability to perform basic work activities," [dkt. 7-2 at 13], the ALJ never explains *how* Lonnie's obesity is controlled or otherwise does not affect him. The ALJ makes no mention of Lonnie's obesity when formulating the RFC, even minimally, as required for the Court to follow her reasoning. *See Skarbek*, 390 F.3d at 503-04. The ALJ's boilerplate recitation that she has "considered" Lonnie's obesity when evaluating his limitations is not sufficient, particularly in light of the Lonnie's recognized spinal issues. *See, e.g.*, *Tracey S.*, 2020 WL 831588, at *6.

The Court cannot say that the failure to adequately consider Lonnie's obesity was harmless in light of Dr. Obermeyer's multiple notes that obesity was a "complicating factor" with respect to his spinal issues and that his recovery may take longer than an "average patient with an uncomplicated case." [Dkt. 7-9 at 68, 71, 74.] The Seventh Circuit "recognize[s] that the combined effect(s) of obesity with other impairments may be worse than those same impairments without the addition of obesity." *Stephens*, 888 F.3d at 328 (citing *Martinez*, 630 F.3d at 698 ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40.")).

While certain medical providers did consider Lonnie's weight in their opinions, the ALJ did not find those opinions to be entirely persuasive nor did she adopt all of the limitations set out

---

[7] The ALJ found one of Lonnie's severe impairments to be "degenerative spondylosis." [Dkt. 7-2 at 13.] "Spondylosis" is "an umbrella term for different forms of age-related degeneration of the spine." *Spondylosis*, COLUMBIA UNIV. IRVING MED. CTR. (last visited Aug. 7, 2023), https://www.neurosurgery.columbia.edu/patient-care/conditions/spondylosis.

9

by those providers. The state-agency physicians noted Lonnie's weight and BMI, [dkt. 7-3 at 3, 16, 31, 45]; however, the ALJ did not find these opinions to be persuasive with respect to Lonnie's physical limitations. [Dkt. 7-2 at 23.] Dr. Kurt Jacobs noted Lonnie's height and weight, [dkt. 7-8 at 124], but while the ALJ found his opinion to "have some persuasiveness" she did not adopt all of the limitations that Dr. Jacobs suggested. [*Compare id.* at 125 (Dr. Jacobs found that Lonnie could lift/carry 30 pounds on an occasional basis) *with* dkt. 7-2 at 16 (the ALJ found that Lonnie could lift up to 25 pounds frequently and up to 50 pounds occasionally).] Dr. Robert Kurzhals also mentioned that Lonnie was "overweight" in his opinion, [dkt. 7-8 at 131], but the ALJ found that this opinion had "limited persuasiveness." [Dkt. 7-2 at 24.] Accordingly, the Court cannot say that while the "ALJ did not explicitly consider" Lonnie's obesity, "it was factored indirectly into the ALJ's decision as part of the doctors' opinions." *Skarbek*, 390 F.3d at 504.

In summary, despite the ALJ's awareness and passing mention of Lonnie's obesity, the Court must conclude that she did not articulate, even minimally, her analysis of the evidence such that the Court could follow her reasoning. The Court cannot say that the failure to analyze Lonnie's obesity was harmless and, thus, remand is warranted.

### B. The ALJ erred by failing to explain how Lonnie could frequently stoop and crouch despite record evidence to the contrary.

Lonnie argues that the record evidence shows that he has only 50 degrees of lumbar flexion and an inability to squat, which "strongly undermines the ALJ's conclusion that [Lonnie] frequently can stoop and crouch." [Dkt. 11 at 29.] Lonnie argues that "[p]roper assessment of [his] stooping and crouching capabilities is crucial because all but one of the occupations identified at Steps Four and Five require at least occasional stooping or crouching." [*Id.* at 29, 34 (citing the Dictionary of Occupational Titles ("DOT") requirements for Forklift Operator, DOT No. 921.683-050, 1991 WL 688069 (occasional stooping and crouching; constant reaching); Packaging Line

Attendant, DOT No. 920.587-018, 1991 WL 687916 (constant reaching); Laundry Worker II, DOT No. 361.685-018, 1991 WL 672987 (occasional stooping; frequent reaching); Groundskeeper (i.e., Landscape Specialist), DOT No. 406.687-010, 1991 WL 673342 (frequent stooping; occasional crouching; frequent reaching); Industrial Cleaner, DOT No. 381.687-018, 1991 WL 673258 (frequent stooping and crouching; frequent reaching).]

The Commissioner argues that Lonnie relies on Dr. Jacobs' exam showing 50 degrees of forward flexion and an inability to squat, but notably did not say that Lonnie had any limitations stooping or crouching. [Dkt. 19 at 17.] Nor did the state-agency physicians find that Lonnie had such limitations. [*Id.*] The Commissioner argues that "[t]he ALJ discussed [Lonnie's] complaints about limited squatting and bending, weighed the results of Dr. Jacobs' exam, and relied most on Dr. Jacobs' findings," and accordingly "[i]t was reasonable for the ALJ to rely most on the expert's findings over [Lonnie's] lay, post-hoc, and partial interpretation of the evidence." [*Id.*]

The Seventh Circuit has held that it is error for an ALJ to conclude that a claimant can "stoop, kneel, crouch, and crawl for one-third of an eight-hour work day" when medical evidence showed that the claimant had only 50 degrees of flexion in her lower back and was unable to squat. *Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013); *see also Kelly M. v. Saul*, 2020 WL 8991738, at *2 (N.D. Ind. Mar. 31, 2020) (holding that "[t]he ALJ here erred in finding that Plaintiff could stoop for one-third of an eight hour work day without addressing the multiple reports that stated Plaintiff only had between 20 and 30 degrees of lumbar flexion. The evidence shows that Plaintiff was incapable of bending at the waist to a degree that would allow stooping for up to a third of the workday.").

In the present case, Dr. Jacobs found that Lonnie had a forward lumbar flexion of 50 degrees, whereas the "normal" flexion is 90 degrees. [Dkt. 7-8 at 126.] Dr. Jacobs also found that

11

Lonnie was unable to squat. [*Id.* at 125.] Though the Commissioner argues that Dr. Jacobs did not say that Lonnie "had any limitations stooping or crouching," [dkt. 19 at 17], the Commissioner does not cite, nor has the Court found, any evidence showing that Dr. Jacobs affirmatively found that Lonnie *could* stoop or crouch without limitation (in addition to his finding that Lonnie is unable to squat), just that he did not explicitly note such additional limitations on his report. The ALJ notes Dr. Jacobs' findings that Lonnie is "unable to . . . squat," and that he had "reduced cervical rotation" and "forward elevation," but does not otherwise explain how those findings square with her ultimate RFC finding that Lonnie can "frequently stoop and crouch." [Dkt. 7-2 at 16, 19, 23.] Accordingly, the ALJ's finding that Lonnie can frequently stoop and crouch is not supported by substantial evidence, and remand is further warranted.

### C. Other Arguments.

Having found that remand is necessary for the reasons detailed above, the Court declines to substantively address the Parties' remaining arguments.

## IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision that Lonnie was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**SO RECOMMENDED.**

Date: 8/9/2023

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

12

Distribution:

Eric Harris Schepard
SSA-Ogc
eric.schepard@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Adriana Maria de la Torre
THE DE LA TORRE LAW OFFICE LLC
adriana@dltlawoffice.com